[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR MODIFICATION OF CHILD SUPPORT AND ALIMONY ORDERS
The defendant by motion dated January 8, 1992, has moved to modify existing child support and alimony orders entered at the time of dissolution of marriage on February 23, 1990 on one or more of the following grounds: CT Page 2922
 a. The child support order substantially deviated from the child support guidelines established by 46b-215a.
 b. There has been a substantial increase in the plaintiff-mother's earning capacity.
 c. There has been a substantial decrease in the defendant-husband's earning capacity.
d. The plaintiff-mother is cohabitating.
 e. Pursuant to General Statutes 146b-86, the plaintiff-mother is living with another person under circumstances that alter the financial needs of the plaintiff-wife.
Many of the facts that give rise to this motion are not in dispute.
The marriage between the parties was dissolved on February 23, 1990. A stipulation entered into between the parties dated January 21, 1990, was incorporated by reference into the judgment decree. The relevant portion of the stipulation and judgment provided as follows:
 "That the defendant, father agrees to pay child support in the amount of $117.50 per child, per week. Additionally, the defendant agrees to pay $50.00 per week alimony which is non-modifiable as to the duration of payments, and which shall continue until twelve years from the date of Judgment, but shall be terminated upon death of either party or remarriage or cohabitation of the plaintiff."
On the date of dissolution the plaintiff had a gross weekly income of $441.35 and a net weekly income of $312.93. On the date of dissolution the defendant had a gross weekly income of $880.00 and a net weekly income of $575.89.
I — THE ISSUE OF MODIFYING THE SUPPORT ORDER
The court finds the following additional facts. In 1990, the defendant was the assistant administrator for the Memorial Hospital in Meriden, Connecticut supervising approximately 80 people. On or about January 10, 1991, the Memorial Hospital merged with the Meriden-Wallingford Hospital. The new entity is now known as the Veterans Memorial Center. At the time of the merger the hospital officials made a representation to the City of CT Page 2923 Meriden that there would be no lay off for a period of 2 years resulting from the merger. In June or July of 1991, the defendant commenced to look for another job. He was offered a severance package that included 18 months of continued hospital paid health care insurance coverage for the defendant and his dependents, a cash payment of $15,000.00 and a contract between Veterans Memorial Center and Rehab, Inc. of which the defendant is the principal, to provide technical cardiac procedures over the following year, the total payment for which would not exceed $15,000.00. His final date of employment was to be January 3, 1992. The defendant voluntarily terminated his employment with Veterans Memorial Center and accepted the proposed severance package. The merger of the two hospitals resulted in the defendant being given a new position that he was not happy with. After the merger, there were approximately 18 division heads including the defendant. The merger of the two hospitals only required nine to ten division heads. No division head has been involuntarily terminated from employment as a result of the merger. The severance package with the defendant was agreed upon by the president and chief executive officer of the Veterans Memorial Hospital by letter dated December 5, 1992. The agreement for technical services between Veterans Memorial Hospital and Rehab, Inc. was entered into on behalf of the Veterans Memorial Medical Center by the senior vice-president. Both the severance package and the agreement for technical services were entered into by parties who had the authority to enter such agreements on behalf of Veterans Memorial Medical Center. The defendant also claims that there is a restriction regarding the $15,000.00 between the Veterans Memorial Center and Rehab, Inc. calling for monthly payments for January, February and March 1992, totalling $3,750.00 and then monthly for the months of April to and including December of 1992, of $1250.00 per month. This monthly agreement was entered into on behalf of Veterans Memorial Medical Center by Ralph Becher. The court finds from the evidence that this monthly pay out agreement was not validly entered into on behalf of Veterans Memorial Medical Center. The court further finds from the evidence that the defendant is entitled to receive the full $15,000.00 as soon as he has completed technical cardiac procedures through Rehab, Inc. totalling 450 hours. Defendant claims that his present weekly gross is $403.85 as a result of being employed by Rehab, Inc. In making that claim the defendant does not take into consideration the $15,000.00 he received as part of his severance package on January 3, 1992. He further does not take into consideration the fact that he is able to earn the full $15,000.00 through Rehab, Inc. as soon as he completes the 450 required hours. Prior to voluntarily terminating his employment with the Veterans Memorial Medical Center on about January 3, 1992, the defendant's weekly earnings for the period of January 19, 1991 through January 4, 1992, on a gross weekly basis was $1107.60 through November 21, 1991, and then a retroactive CT Page 2924 increase which resulted in his gross weekly income being increased for the period of November 16, 1991 through January 3, 1992 to $1,162.80. The defendant received his annual evaluation for the period of January 13, 1991 through September 30, 1991. This evaluation included the fact that he had performed in an excellent manner during his first nine months in his position of Vice-President of Operations/Chief Operating Officer. From all the evidence presented, this court finds that the defendant voluntarily terminated his employment and, therefore, it is appropriate to consider his earning capacity in determining an appropriate support order. Although the plaintiff was only working part time at the time of dissolution, she is now employed on a fulltime basis. Her present weekly gross wages is $703.45 with a net weekly wage of $479.52.
The court finds that there has been a substantial change in circumstances of the parties. The court further finds that the existing support order is not in compliance with the support guidelines. Based on the defendant's earning capacity of $1,162.80 gross weekly which amounts to a net weekly earning capacity of $790.00, plus the plaintiff's net weekly wage of $479.52, the support guideline for two children ages 11 and 8 would indicate an appropriate total weekly support order of $456.00 with the defendant responsible for paying a total weekly support of $284.00. In determining the issue of support, the court has considered the child support guidelines in addition to all of the appropriate statutory criteria. The court orders that the total weekly support for the two minor children be increased to $142.00 for each of the two minor children for a total weekly support order of $284.00.
II — THE ISSUE OF MODIFICATION OF THE ALIMONY ORDER
The defendant claims that the alimony order should be terminated both on the basis of cohabitation by the plaintiff and on the basis of 46b-86 (b) which provides in part that in any action for dissolution of marriage, in which a final judgment has been rendered providing for the payment of periodic alimony by one party to the other, the Superior Court may in its discretion, modify, suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party. The defendant raises two separate grounds for termination of alimony, the first being cohabitation and the second being 46b-86 (b). As stated in Kaplan v. Kaplan, 186, 387, 389 (1982) in discussing the requirements of 46b-86 (b): CT Page 2925
 As stated in our earlier opinion, Kaplan v. Kaplan, supra, 45-46, 46b-86 (b) "requires the party moving for modification to show that the party receiving alimony is `living with another person' and that this living arrangement has caused a `change of circumstances' which `alter[s] the financial needs' of the party receiving alimony. General Statutes 46b-86 (b). We note that the General Assembly chose the broader language of `living with another person' rather than `cohabitation' and that this provision requires only a `change' of circumstances not a `substantial change' as required by 46b-86 (a)." We also note that even after the required factual showings the ultimate decision is still entrusted to the discretion of the trial court. General Statutes 46b-86 (b).
Cohabitation, on the other hand, as defined in Wolk v. Wolk,191 Conn. 328, 332 (1983) is a dwelling together of man and woman in the same place in the manner of husband and wife. 2 Am.Jur.2d, Adultery and Fornication 1.
The court finds the following additional facts regarding the issue of termination of alimony. Between February of 1990 and up to the present time, the plaintiff has been sexually involved in a relationship with a man. Within the past three to four months, the only boyfriend that the plaintiff has is this individual and the only female relationship that the man has is with the plaintiff. This man spends evenings at the plaintiff's residence. During the past three to four months he has remained there overnight nearly all the time. His employment work shift is from 7:30 a.m. to 4:00 p.m. He has work clothes and casual clothes at the plaintiff's residence. He normally has coffee there when he gets up in the morning. He generally has his evening meal at the plaintiff's residence. He often spends time with the two children of the plaintiff and the defendant. He does not pay any money to the plaintiff for residing there. On some occasions he has provided milk for the family residence. He often takes the plaintiff and the two children out for pizza. He does plan on marrying the plaintiff. No date has been set as of the present time. He assists around the plaintiff's residence by taking out the trash, washing clothes, doing some dishes, occasionally watching the children, and on occasion working on lawn shrubs. He has his lawn mower at the plaintiff's residence and also his bicycle. On one occasion he stayed home from work in order to watch the plaintiff's children. He monitors the activities of the plaintiff's two children and has concerns for them. He has gone on vacations with the plaintiff and the two children. The most recent vacation was to Florida that lasted approximately two weeks CT Page 2926 at Disney World. This was during November or December 1991. He paid for approximately $2,000.00 to $2,500.00 of the vacation cost and the plaintiff paid for an approximate equal amount. He has also vacationed with the plaintiff at Cape Cod and Vermont. He has a key to the plaintiff's residence and the burglar alarm code and can come and go as he pleases at the plaintiff's residence. He also owns his own home that is presently vacant. He is the only one that pays the mortgage, taxes, insurance and utilities on that residence. Most of his clothes are at his own home and he receives his mail at his own home. He has his separate checking and savings account in his name only.
From all of the evidence presented, the court finds that the plaintiff is cohabitating with this person. The court finds from all the evidence presented that this living arrangement has not caused a change of circumstances as to alter the financial needs of the plaintiff. The court, therefore, concludes that the defendant is not entitled to any change in the alimony order as a result of 46b-86 (b). The Court further finds that the alimony order should be terminated because the plaintiff is cohabitating with this man in her residence in the manner of husband and wife.
The orders entered at the time of dissolution on January 21, 1990, require the defendant to pay as support the sum of $117.50 for each of the two children for a total support order of $235.00 plus $50.00 per week alimony for a total combined order of $285.00 per week. The order of alimony has been terminated as a result of this decision and the order of support has been increased to $285.00 per week as a result of this decision. Both the order terminating alimony and the order modifying support are effective March 31, 1992.
SIDNEY AXELROD, JUDGE